**POLK TERRACE, INC., et al., Appellants,**

v.

**Nelson Ray HARPER, Appellee.**

**No. 99.**

Court of Civil Appeals of Texas.

Tyler.

Jan. 21, 1965.

Rehearing Denied Feb. 11, 1965.

Jack D. Eades, Lefkowitz, Green, Ginsberg, Eades & Gilmore, Dallas, for appellants.

Donald W. Cantwell and J. Keith Marks, Dallas, for appellee.

MOORE, Justice.

This suit was brought by Nelson Ray Harper against appellants, Polk Terrace, Inc. and General Housing Company of Texas to recover damages for fraud under the provisions of Article 4004, Vernon's Ann.Tex.St. based upon alleged fraudulent misrepresentation inducing him to purchase a dwelling house. Appellee alleged that prior to his purchase of the house appellants' agent, George R. Rieger, represented to him that the house complied with the requirements of the Veterans Administration Housing Program; that such statements were later found to be false because after having trouble with the foundation he employed a concrete testing firm to test the strength of the concrete and it was determined that the compressive strength of the concrete was only 586 pounds per square inch, whereas the minimum requirements of the Veterans Administration was 2000 pounds per square inch. Appellee alleges

that by reason of such false representation he was induced to purchase the house at the agreed price of $10,350.00 whereby he had been damaged in the sum of $7,000.00 for which he prayed. Appellee also prayed for exemplary damages but the claim was eliminated from the case. Appellants, in addition to a general denial, filed an unsworn special denial of agency and alternatively denied the authority of Rieger to make such representations and affirmatively set up the two year statute of limitation.

The jury in response to the special issues found substantially as follows: (1) that Polk Terrace, Inc. and/or General Housing Company represented that the house complied with the Veterans Administration Program requirements; (2) that such representation was false; (3) was made for the purpose of inducing Harper to purchase the house; (4) was material; (5) was relied upon by Harper; (6) that Harper would not have purchased the house had such representations not been made; (7) Harper was not in possession of such information as would have put an ordinarily prudent person on notice that the foundation did not comply with the Veterans Administration Program requirements prior to November 16, 1960 (two years before he filed suit) and (8) the reasonable market value of the house and lot, in its condition on the date of purchase, was $3,350.00.

After overruling appellants' motion for judgment notwithstanding the verdict, the court rendered judgment against the appellants in the amount of $7,000.00. Appellants' motion for a new trial was also overruled, after which they perfected this appeal.

Both appellant corporations were shown to be engaged in the business of constructing and selling dwelling houses. All advertising and sales promotion for both corporations, however, was handled by General Housing Company. S. R. Franck was the president and R. M. Phillips, Jr. was vice-president of both corporations and it is alleged that both corporations operated at the same office address in Dallas, Texas.

On November 7, 1955, appellee, having seen newspaper ads and signs offering "V. A." and "F.H.A." houses for sale by appellant General Housing Company, went to the field office of General Housing Company where he met George R. Rieger, the company's sales manager. After some discussion with Rieger with regard to the houses, Harper and his wife selected a house which was then under construction. It was during this discussion that Rieger is alleged to have represented to them that the house was constructed in compliance with the requirements of the Veterans Administration Program. After agreeing upon the price and other terms of the sale, Rieger prepared a contract of sale and receipt of earnest money contract. The contract showed "Polk Terrace, Inc." acting as its duly authorized agent to be the seller and Harper to be the buyer. Harper signed the contract. "Polk Terrace, Inc." was typewritten at the place designated for the signature of the seller and George R. Rieger signed immediately below. Beneath his signature was the printed word "seller."

On January 6th, 1956, Polk Terrace, Inc., acting by and through its president, S. R. Franck, conveyed the house and lot to appellee Nelson Ray Harper and wife, Billie Harper, reciting a consideration of $10,350.-00.

Appellee Harper testified that within about two weeks after he moved in the house in January, 1956, he observed some cracks in the garage wall and in the winter of 1956 became suspicious of his foundation being weak. In 1957 he observed some of his doors sticking and in 1959 he made a complaint to the appellants about the foundation and the concrete curb of the beam. As a result, appellants poured some topping on the curb. In 1960 two humps developed in the kitchen floor and the blocks of floor covering broke loose, and his children lifted them up and had an "inside sand pile." In early November, 1960, he called Pittsburgh

Testing Laboratories and asked them to make a test of the concrete foundation. On November 16, 1960, the company drilled a core for the purpose of testing the compressive strength of the concrete and on November 24th or 25th of 1960, they reported that their tests showed that the compressive strength was only 586 pounds per square inch. Thereafter, he contacted Mr. Stiles of the Veterans Administration and upon being advised that the minimum requirement as to compressive strength of the concrete was 2000 pounds per square inch, he and Stiles contacted R. M. Phillips, Jr. of General Housing, who thereafter made certain repairs at the places where the concrete was broken. On November 16, 1962, almost two years after the tests were made on the foundation, appellee filed this suit.

Appellants' first point of error contends that the trial court was in error in overruling this motion for judgment notwithstanding the verdict and failing to grant judgment in their favor because the undisputed evidence showed as a matter of law that appellee, more than two years prior to the institution of this suit, had knowledge of such facts that would have caused a reasonably prudent person to make inquiry which would have led to the discovery of the fraud; therefore, appellee's claim was barred by the two year statute of limitation.

The issue of actionable fraud was sufficiently raised by the pleadings and the evidence, and the jury found that appellee Harper did not have such information as would have put an ordinarily prudent person on notice of the fact that the concrete foundation did not comply with the compressive strength requirements of the Veterans Administration Housing Program prior to November 16, 1960. This suit was filed within two years from that date.

█ It is the well-settled rule in this state that fraud prevents the running of the statute of limitation until it is discovered. Port Arthur Rice Mill Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S.W. 926, 929; Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263, 37 Tex. Jur.2d, para. 70.

█ Knowledge of the facts that would cause a reasonably prudent person to make inquiry which if pursued would lead to a discovery of fraud is in law equivalent to knowledge of the fraud. Glenn v. Steele, 141 Tex. 565, 61 S.W.2d 810; Wise v. Anderson, 163 Tex. 608, 359 S.W.2d 876.

█ Appellants contend that the evidence in this case shows as a matter of law that appellee was in possession of facts which would have caused a reasonably prudent person to make inquiry as to the cause of the breaking of the concrete foundation, which if pursued with due diligence would have led him to discover the fraud more than two years before filing suit. Appellants cite as authority the cases of Carver v. Moore, (Tex.Com.App.) 288 S.W. 156; Sherman v. Sipper, supra; Wise v. Anderson, supra, and White v. Bond, Tex., 362 S.W.2d 295. We believe the facts in those cases to be distinguishable from the facts presented here. In those cases the facts that put the plaintiff on inquiry were not concealed. The testimony here shows that Harper was a sheet metal worker and a welder. He testified that he was not familiar with construction and had never had any experience dealing with concrete. Although he no doubt concluded that something was wrong with the foundation, he was not in possession of "facts" sufficient to constitute constructed notice that the lack of compressive strength of the concrete was the cause. The compressive strength of concrete is not such a matter as would be readily ascertainable by an ordinary layman. Knowledge of a break in the foundation would not be conclusive proof of lack of compressive strength. There could have been other causes, such as improper support as well as stress caused by the weight of the house. The jury found that he was not in possession of facts sufficient to put an ordinarily prudent person on notice that the foundation did not comply

with the compressive strength requirements of the Veterans Housing Program prior to the time he had same tested by a testing laboratory.

■ Ordinarily, what constitutes reasonable diligence to discover fraud is a question of fact for the jury. What will constitute reasonable diligence to discover fraud and when the fraud might have been discovered by the exercise of such diligence are necessarily questions which must be determined from all the facts and circumstances in evidence in each particular case. When, under the facts in evidence, reasonable minds might differ on such issues, the findings of the jury thereon are binding on the appellate court. Ray v. Barrington, (Tex.Civ.App.) 297 S.W. 781; Ruebeck v. Hunt, 142 Tex. 167, 176 S.W.2d 738. Appellants' first point is overruled.

In appellants' second point it is contended that as a matter of law there was no proof of agency nor proof of the authority of the alleged agent to make representation to the respect of the quality of the house.

It is undisputed that Polk Terrace, Inc. employed General Housing Company as their agent for the purpose of advertising and selling the houses constructed by it. It was conclusively shown that the advertising and brochures published by General Housing Company contained statements to the effect that all of the houses were constructed in accordance with "V.A." and "F.H.A." requirements. It was further shown that General Housing was not in the real estate-brokerage business, nor was their sales manager, George R. Rieger, a licensed real estate agent. Rieger was employed and paid a salary and drew no commission on the sale of the houses. He testified that although he was employed by General Housing his immediate superior was Mr. Franck, president of Polk Terrace, Inc., and that he took his instructions from both Mr. Franck and Mr. Dolf, who he described as Mr. Franck's right-hand man. Mr. Dolf instructed him on

how to prepare the contract. It was conclusively shown that after the contract was prepared, Mr. Franck accepted the same and as president of Polk Terrace, Inc. executed the deed to Harper. R. M. Phillips, Jr., vice-president of both of the appellant corporations, was the only witness to testify in behalf of appellants. Nowhere in his testimony does he deny that Rieger was not an agent of either corporation, nor did he deny that Rieger did not have authority to represent to Harper that the house complied with the minimum standards of the Veterans Administration Housing Program.

■ In our view the evidence is sufficient to show that Rieger was the duly authorized agent of Polk Terrace, Inc. and was acting in the scope of his actual and apparent authority not only in the execution of the contract, but also in assuring Harper that the house was constructed in compliance with the Veterans Administration requirements. Polk Terrace, Inc. clothed Rieger with the indicia of authority which would lead a prudent person to believe that he had authority to make statements as to the quality of the house.

■ The question of whether an agency relation exists between an alleged principal and agent is a question of law that must be determined solely by the trial court, in light of the relations of the parties under the agreement between them or in view of their acts and conduct. More specifically, it is the function of the trial court alone to determine whether, under an ascertained state of facts, a legally valid agency relation exists between the parties. The province of the jury in this connection is to determine only whether or not certain facts exist—not whether, if such facts do exist, they are legally sufficient to constitute the alleged agency. Minneapolis-Moline Co. v. Purser, (Tex.Civ.App.) 361 S.W.2d 239, 241; 2 Tex.Jur.2d 694.

Neither party requested any issues relating to the question of agency nor were any issues requested relating to the question

of scope of authority of the alleged agent. Appellants did not object to the failure of the court to submit such issues.

Under such circumstances, the trial court decided these issues in accordance with the evidence and in support of its judgment because the determination thereof by the jury was waived. Rule 279, Texas Rules of Civil Procedure; Blackburn v. Sanders, (Tex.Civ.App.) 278 S.W.2d 924; J & M Construction Company v. White, (Tex. Civ.App.) 371 S.W.2d 780; 2 Tex.Jur.2d, p. 704, para. 246. There was ample evidence in the record to support the court's presumed finding that both Rieger and General Housing were general agents, as distinguished from special agents, and therefore had authority to make statements and representations relating to the quality of the house.

■ Appellants' remaining point asserts that the alleged representation that "the house complied with minimum Veterans Administration Housing Program requirements" is not, as a matter of law, an actionable false representation because Rieger neither knew nor represented anything about the quality of the foundation or its compliance with the Veterans Administration specifications. We cannot agree with this contention. The representation that the house complied with Veterans Administration requirements, we think, is tantamount to stating that the house was constructed in accordance with each and every standard required under the Veterans Housing Program, which would include the requirement that the compressive strength of the concrete be 2000 pounds per square inch. It was conclusively shown that the concrete fell far short of the required standard and hence we think that the statement was an actionable false representation. Appellants further argue that even though the statement amounted to a false representation, it was but a mere statement of opinion. We do not agree.

" 'Material misrepresentations as to the quality of a thing which is the sub-

ject matter of the transaction are actionable when such misrepresentations induce the other party to enter into the transaction and are relied on to his damage.' 20–A Tex.Jur. 61.

"Although statements of mere opinion clearly such are not generally sufficient to form the basis of actionable fraud, this rule has many exceptions and qualifications. In fact, it seems the tendency is to hold those who practice the highly developed art of salesmanship to a stricter system of ethics than found on the horse-trading lot. With both State and Federal laws regulating and licensing brokers and salesmen, requiring fair trade practices, truth in advertising and full revelation in security transactions, becoming effective and more restrictive each year, the position of the ignorant buyer who relies on the skillful seller is better than that he must always beware. 'Thus it is held that when a party affirms as an existing fact material to the transaction that which otherwise might be only an opinion, the other party may reasonably treat the affirmation as a statement of fact and may rely and act upon it as such; if false, such a statement may be actionable.' 20–A Tex.Jur. § 11, p. 29."

Bell v. Bradshaw, (Tex.Civ.App.) 342 S.W. 2d 185.

■ The fact that Rieger may not have known whether the house had been constructed in compliance with Veterans Administration requirements, and had no knowledge of the truth or falsity of such a statement would not make the statement less actionable. Under the provisions of Article 4004, V.A.T.S. bad faith is not made an element. Wilson v. Jones, (Tex.Com. App.) 45 S.W.2d 572; Passero v. Loew, (Tex.Civ.App.) 259 S.W.2d 909; Crofford v. Bowden, (Tex.Civ.App.) 311 S.W.2d 954. Appellants' third point is accordingly overruled.

The judgment is affirmed.