**Phil J. HOWARTH, Appellant,**

v.

**Robert PFEIFER, Appellee.**

**No. 890.**

Supreme Court of Alaska.

July 10, 1968.

Joe P. Josephson, Anchorage, for appellant.

Eugene F. Wiles and James K. Singleton, Delaney, Wiles, Moore & Hayes, Anchorage, for appellee.

OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Following a fire which destroyed certain property in Spenard, Alaska in 1961, appellant sought damages in this action resulting from an alleged breach of an oral contract for fire insurance and from an alleged negligent misrepresentation that fire insurance had been obtained with respect to such property. The trial court found that there was insufficient evidence of an oral contract for fire insurance for that issue to go to the jury, and directed a verdict in appellee's favor as to such issue. The issue regarding the alleged negligent misrepresentation was submitted to the jury which found in favor of appellee and against appellant, and judgment was entered accordingly.

Appellant appealed to this court from the judgment below. On February 3, 1967 we issued an opinion holding that a jury question as to the alleged oral contract for fire insurance was not presented and, therefore, that the trial court was correct in directing a verdict in appellee's favor as to such issue.[1] With respect to appellant's fourth claim for relief based on an alleged negligent misrepresentation by appellee that he had obtained fire insurance coverage for the premises, whereas as in fact he had not, we also held that the court erred in instructing the jury that appellant could not recover without proving that appellee had an actual, purposeful intent to deceive or defraud appellant. We said that this was error because there was no evidence from which a jury could find a deceitful intent and that this error may have been prejudicial. Accordingly, we reversed the judgment below and remanded the case for a new trial.

On remand there was no trial. The court below granted appellee's motion for a summary judgment. Appellant then brought this second appeal.

The property involved was an apartment building owned by appellant. In August 1961 appellant entered into a written agreement to sell the property to Progressive Enterprises, Inc. Progressive agreed to pay a lump sum on execution of the contract and subsequent monthly installments until the balance of the agreed purchase price had been paid. But Progressive also agreed to maintain fire insurance on the building with the policies of insurance "to be made payable to the parties * * * as their respective interests may appear at the time of loss."

On September 10, 1961, before all of the agreed purchase price had been paid, the building was destroyed by fire. Although appellant had originally insured the property against loss by fire, that insurance had been cancelled at his request prior to the fire.

At the trial appellant testified that at the time the contract with Progressive was entered into on August 22, 1961, Progressive requested that it be allowed to write the fire insurance with appellee's agency, instead of prorating the existing policies held by appellant, and that appellant had granted this request.

Appellant also testified that on the same day he telephoned and talked to appellee. He said that it was not his intent by that call to place any insurance with appellee, but that he simply wanted to let appellee know what Progressive would need in the way of fire insurance under the contract at such time as Progressive called appellee to write the necessary insurance. When asked what appellee indicated he would do, appellant stated:

Well, we talked about it and I told him what the requirements were and one thing that's quite in my mind is the fact that we had a little discussion about rental income versus business interruption insurance, and I requested

---

1. Howarth v. Pfeifer, 423 P.2d 680 (Alaska 1967).

rental income insurance and he told me that I meant business income insurance, and I told him that isn't what I wanted —rental income. He assured me that it was the same thing, and I said I wanted rental income for these people because that's what the contract stated. That's what I was talking about. I wasn't ordering insurance by any means. I was simply telling him what they required and what the contract said, because after all, he couldn't write something different than the contract or he'd have to be changing it. Unless he wanted to write more then, that, of course, is up to the purchaser.

As to that conversation appellee testified that appellant had called him on August 25. When asked what the conversation was all about, appellee said:

> Well, about the 25th of August, Mr. Howarth called me and said that he was selling the building at the Ital— that the Village was housed in, to Mr. Robert Burns and spelled out to me that they needed $25,000.00 in coverage, and $7,200.00 in rental income, and I asked Mr. Howarth at the time if this was an order, and he said, "No, I don't have anything to do with it, but when you sell the insurance to Mr. Burns, this is what I need." So I said, "Fine. I'll see if I can't contact Mr. Burns and sell him the additional insurance."

Appellant testified that he called appellee's office again on August 28, that he talked to a person named Alice Stewart, and that she told him that the insurance was "bound", that it was on appellee's desk, but that it was not written. Appellant then testified that on August 29 he called appellee's office and spoke to appellee. When asked whether he recalled his conversation with appellee, he said:

> Yes, I was assured that the $25,000.00 fire and extended coverage and the rental income was bound and of importance to me was whether it—the transaction had gone far enough that

I could cancel my insurance and I asked him if it was all right to cancel mine, and he said, yes, it's all right.

As to the existing insurance on the building, appellant stated that he'd picked up the policy at the First National Bank on September 6, 1961, and that on September 7 he delivered it to the Crusey Agency for cancellation.

In his claim against appellee for negligent misrepresentation, appellant alleged that appellee on August 29, 1961 negligently stated to appellant that appellee had obtained fire and rental income insurance and that the premises were covered, that in reliance on appellee's statement appellant cancelled his other insurance covering the premises, and that as a direct result of the negligence of appellee, appellant was damaged to the extent of $29,800.00 when the building was destroyed by fire. Appellant argues that the evidence referred to above consisting primarily of his testimony is sufficient to create a triable issue of fact as to a claim for negligent misrepresentation. The trial court felt otherwise. In its order granting appellee's motion for summary judgment, the court said:

> The Court has considered the pleadings, the entire transcript of the proceedings at trial, the Opinion of the Supreme Court on the Appeal, and the written and oral arguments of plaintiff Howarth and Defendant Pfeifer. It appears that there are no genuine issues of material fact and that the sole issues relate to the legal effect of the statements which, for the purposes of this Judgment, it is assumed were made to plaintiff Howarth by defendant Pfeifer and Pfeifer's employee, Mrs. Stewart. This Court has concluded that these statements, considered in light of the relationship between Howarth and Pfeifer, do not, as a matter of law, meet the legal test to sustain a cause of action for negligent misrepresentation and that therefore defendant is entitled to judgment as a matter of law.

The main question here is whether there should be liability for negligent language, and under what circumstances liability should exist. In England the general rule had been that there was no liability for negligence in word as distinguished from act. The American courts, however, have been more liberal and have held in some instances that a negligent statement may be the basis for the recovery of damages.[2] But principles of law in this area are not well-defined.[3] "Not every casual response, not every idle word, gives rise to a cause of action."[4] Liability arises only where there is a duty, if one speaks at all, to give correct information.[5] And this involves various considerations, such as the existence of knowledge, or its equivalent, on the defendant's part that the information is desired for a serious purpose and that the plaintiff intends to rely upon it, foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, and the policy of preventing future harm.[6]

Application of those factors here makes a case for the jury on the question of negligent misrepresentation. Appellant testified that Pfeifer assured him that insurance on the premises was bound and that it was all right for appellant to cancel his other policies of insurance. If appellant is to be believed, it means that appellant sought the information from appellee as to insurance for a serious purpose, i. e., to see that the premises were insured against risk of loss by fire, that appellee was aware of that purpose, and that appellant intended to rely upon appellee's assurance that he had obtained insurance coverage for the property by appellant cancelling his other insurance. Harm to appellant, if appellee's assurances were not true, was foreseeable to a reasonable mind, so prone is the failure of insurance protection to result in irretrievable disaster to the individual.[7] There is no question but that appellant suffered harm since he had a substantial interest in the uninsured premises that were destroyed by fire. There is a close connection between appellee's conduct and the loss suffered, because if appellant's testimony is true, appellant would not have cancelled his other insurance on the property and it would not have been uninsured at the time of the fire. Finally, the policy of preventing future harm is a relevant factor. Assuming the presence of the essential factors establishing a duty of care, then those engaged in the insurance business are required to speak carefully regarding insurance matters because of the foreseeability of pecuniary harm if they speak without reasonable care. Such persons understand perfectly well the peculiar urgency of the need for correct information on whether property is covered by insurance or not.

Appellee argues that there can be no action for negligent misrepresentation here because appellant and appellee were not in privity. We are not certain what appellee means by the use of the word privity. If he means privity of contract, which is the connection or relation between two or more contracting parties[8], then it must be admitted that there was no privity because of the absence of a contractal relationship between appellant and appellee. However, it does

2. International Prods. Co. v. Erie R.R., 244 N.Y. 331, 155 N.E. 662, 663, 56 A.L. R. 1377, cert. denied, 275 U.S. 527, 48 S.Ct. 20, 72 L.Ed. 408 (1927).

3. Anchorage Independent School Dist. v. Stephens, 370 P.2d 531, 534 (Alaska 1962).

4. International Prods. Co. v. Erie R.R., 244 N.Y. 331, 155 N.E. 662, 663, 56 A. L.R. 1377, cert. denied, 275 U.S. 527, 48 S.Ct. 20, 72 L.Ed. 408 (1927).

5. Id.

6. Id. Lucas v. Hamm, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685, 687 (1961), cert. denied, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962); Biakanja v. Irving, 49 Cal.2d 647, 320 P.2d 16, 19, 65 A.L.R.2d 1358 (1958).

7. See Coffey v. Polimeni, 188 F.2d 539, 543, 13 Alaska 242, 250 (9th Cir. 1951).

8. Black's Law Dictionary 1362 (4th ed. 1951).

not follow that there may not be an action for negligent misrepresentation in such a situation. Privity of contract is not a prerequisite to the maintenance of such an action.[9]

■ The term privity also may signify merely a mutuality of interest growing out of some connection between the parties.[10] To use privity in this sense and to hold that it must exist before there can be liability from negligent misrepresentation is just another way of saying that there must be a relationship between the parties, whether growing out of contract or otherwise, such that in morals and good conscience the plaintiff has the right to rely upon the defendant for information, and the latter owes a duty to give the information with care.[11] Such a relationship could exist in this case. Appellant testified that when he called appellee he was assured that the premises had been covered by insurance and that he could cancel his other policies. It could be argued, and a jury could find, that appellee had given such assurances in order to induce appellant not to influence his buyer, Progressive, to obtain the required insurance coverage elsewhere. This is certainly plausible, since appellee admitted that he was vitally interested in selling the insurance to Progressive, saying: "[W]e started a real race to see if we could get ahold of Mr. Burns (Progressive's agent), going down there several times * * *."

We hold that the relationship between appellant and appellee may have been such, depending on the jury's judgment as to the credibility of witnesses, as to justify imposing on appellee liability for negligent misrepresentation.

■ Appellee argues that a statement that insurance was bound was an expression of opinion and that there is no cause of action for negligent misrepresentation where the misrepresentations involved are matters of opinion rather than fact. We see no basis for such a distinction. The fact is that insurance had not been obtained in this case. Therefore, appellee's statement that insurance was bound, assuming he made such a statement, was not a statement of fact but a statement of appellee's opinion on the subject. But that is the essence of the alleged misrepresentation. There could be no liability in any case if the fact-opinion dichotomy were maintained because the very basis of the plaintiff's claim is that the information given by the defendant upon which plaintiff relied to his detriment was not factual but represented the defendant's mistaken opinion on the subject. The point in cases like this is that liability arises where one has a duty, if he speaks at all, to give correct information—whether the information given is characterized as an opinion or something else.

A representative of the agency where appellant had obtained his existing insurance on the property testified, as a witness for appellee, that the existing insurance policies had been cancelled on August 24, 1961, which was prior to the date that appellant testified he talked to appellee and was assured that new insurance was bound on the premises. Appellee argues from this that appellant could not have relied upon representations made by appellee as to insurance coverage in cancelling his existing policies, and therefore there could be no liability on appellee's part.

■ The evidence on this point was in conflict. One of the existing policies of appellant had a notation on it that it was not sent to the insurance company for cancellation until September 7, and appellant testified that he had not delivered the policy for cancellation until September 6. The alleged conversation between appellant and

---

9. Lucas v. Hamm, 56 Cal.2d 583, 15 Cal. Rptr. 821, 364 P.2d 685, 687 (1961), cert. denied, 368 U.S. 987, 82 S.Ct. 603, 7 L. Ed.2d 525 (1962); Biakanja v. Irving, 49 Cal.2d 647, 320 P.2d 16, 18–19, 65 A. L.R.2d 1358 (1958).

10. Black's Law Dictionary 1361 (4th ed. 1951).

11. International Prods. Co. v. Erie R.R., 244 N.Y. 331, 155 N.E. 662, 664, 56 A.L. R. 1377, cert. denied, 275 U.S. 527, 48 S.Ct. 20, 72 L.Ed. 408 (1927).

appellee and a person in appellee's office had taken place on August 28 and 29. There was a triable issue of fact as to whether appellant had cancelled his existing insurance prior to or after appellee had made the alleged statement that his agency had obtained insurance for the property. Disposition of the controversy between appellant and appellee by summary judgment was inappropriate.

Pointing to the statute which makes the common law applicable in Alaska [12], appellee argues that since there was no cause of action for negligent misrepresentation at common law, there can be none recognized in Alaska in the absence of a statute.

The common law is not a rigid and arbitrary code, crystallized and immutable. Rather it is flexible and adapts itself to changing conditions.[13] After all, the common law "is but the accumulated expressions of the various judicial tribunals in their efforts to ascertain what is right and just between individuals with respect to private disputes." [14] What may be considered a just disposition of a dispute at one stage of history may not be the same at another stage, considering changing social, economic and other conditions of society. We believe that conditions of our society are such that under appropriate circumstances one may have a duty to another to give correct information and that for a breach of that duty he should be held liable for resulting damages. Thus, we hold under the principles we have discussed in this opinion that one may now maintain an action for negligent misrepresentation, even though that may not have been the case under the common law in years gone by.

Another aspect of appellee's argument that should not pass unnoticed is that AS 01.10.010 [15], which makes the common law applicable in Alaska, refers to the common law of England. It should be noted here that we have the common law of the United States now, some of which is over 300 years old. The ancient common law of England is not controlling over the developing common law of our own country.

The court below was mistaken in entering summary judgment for appellee. On appellant's claim against appellee for negligent misrepresentation there were factual questions for determination at a trial. The judgment is reversed and the case remanded for further proceedings consistent with the views expressed in this opinion.

---

12. AS 01.10.010 provides:
    *Applicability of common law.* So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state.

13. Funk v. United States, 290 U.S. 371, 383, 54 S.Ct. 212, 78 L.Ed. 369, 376 (1933).

14. State of Kansas v. State of Colorado, 206 U.S. 46, 97, 27 S.Ct. 655, 667, 51 L.Ed. 956, 974 (1907).

15. Supra note 12.