[No. 2195-3. Division Three. February 16, 1978.]

FIRST CHURCH OF THE OPEN BIBLE, *Respondent,* v. CLINE
J. DUNTON REALTY, INC., ET AL, *Respondents,*
SHERWOOD & ROBERTS, INC., *Appellant.*

Martin G. Weber and Lukins, Annis, Bastine, McKay & Van Marter, for appellant.

R. G. Schimanski, Maurice Cooper, Robert C. Scanlon, and Cooper & Roberts, for respondents.

GREEN, J.—Defendants, Sherwood & Roberts, Inc. (S & R) and Cline Dunton Realty, Inc. (Dunton Realty), appeal from a joint and several judgment for $28,000 in favor of plaintiff, First Church of the Open Bible. The judgment was based upon the trial court's determination that both corporations negligently misrepresented the boundary lines of the property purchased by the church.

Essentially, the assignments of error challenge several findings of fact and the conclusion that defendants are liable to plaintiff. Additionally, Dunton Realty appeals from the dismissal of its cross claim against S & R for indemnity. We affirm.

After a careful review of the record, we conclude the findings entered by the trial court are supported by substantial evidence; and in light of *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959), the findings will not be disturbed.[1]

---

[1] The elements of misrepresentation as found by the trial court are supported

These findings and the background evidence show that during 1972 plaintiff was planning to build a church and retirement home in Spokane and was seeking acreage located on an arterial with a bus line. Robert Clark, a member of the church and a salesman for Dunton Realty, was attempting to locate acceptable property.

Dunton Realty was a member of the Multiple Listing Service of Spokane, Inc. While Mr. Clark was reviewing materials published by the service, he noticed property listed with S & R located at "Apx. N. 8300 Division" that he thought might interest the church. Since the listing appeared to contain only a partial description along with a notation to call the listing office (CLO), Mr. Clark with the assistance of Mr. Oliver, a fellow salesman, called upon S & R for the complete legal description. They talked to Mr. Merkle, an agent for S & R, who gave them a plat map covering three parcels of land designated A, B and C. The court found:

> That the agent Merkle described the property being sold as being located at 8100 [8300] N. Division St., Spokane, Washington, and across the street to the west from Lilac Bowling Lanes, all of which would give one the impression that the property fronted on Division Street. At no time did Mr. Merkle point out the correct boundaries of the property or explain that Parcels A and B were not included. That in fact Mr. Merkle indicated to Mr. Oliver . . . that the property being sold to the Church fronted on Division Street, and he indicated by not striking Parcels A and B from the legal description that he gave to the said Oliver which was given to the plaintiff as the property being sold to plaintiff.

(Finding of fact No. 3.) Based upon the information received from Mr. Merkle, Mr. Clark pointed out the boundaries of the property to the church as containing all

by overwhelming evidence. The trial court concluded, and we agree, that the required standard of proof, clear, cogent, and convincing evidence, has been met. *Dixon v. MacGillivray,* 29 Wn.2d 30, 185 P.2d 109 (1947); *Webster v. L. Romano Eng'r Corp.,* 178 Wash. 118, 34 P.2d 428 (1934); *Andrews v. Standard Lumber Co.,* 2 Wn.2d 294, 97 P.2d 1062 (1940).

three parcels, with Parcels A and B bordering Division Street, an arterial with a bus line. Later, prior to the sale, Mr. Clark began to feel uncertain about the description. He testified that he had a "hunch" that something was wrong and took the legal description of Parcels A, B and C to the assessor's office to find out exactly where the property was located. Someone in that office outlined the parcels on a map and satisfied him that the property bordered on Division Street.

Relying on the representations of Mr. Clark, the church executed an earnest money agreement in February 1973, offering to purchase the property for $49,500. This offer was accepted and in September 1973, the transaction was closed. The closing attorney testified that when he received the earnest money agreement, a legal description was not attached. Consequently, he obtained the legal description from S & R, a description of only Parcel C, and inserted it in the closing documents. Since no realtor was present at the time of closing, the church did not notice the discrepancy.

A few days prior to closing, Mr. Clark learned that "for sale" signs had been placed on Parcels A and B. He contacted Mr. Merkle about the signs and was assured they would be removed. After the closing, the signs still remained. Mr. Clark again called Mr. Merkle requesting removal of the signs and was informed that the signs were not on church property. It was at this point Mr. Clark learned that only Parcel C, not bordering Division or an arterial with bus line service, was involved in the sale.

Thereafter, this action was commenced by the church for specific performance or, in the alternative, damages. The two real estate companies denied the allegations of the complaint and cross-claimed against each other for indemnity in the event liability was determined against them. The trial court found that Mr. Merkle was S & R's agent and represented to Mr. Oliver and Mr. Clark that the property contained in the Multiple Listing Service consisted of Parcels A, B and C and bordered for its entire

length on Division Street when, in fact, the property for sale consisted only of Parcel C which did not border on Division Street. It also found that Messrs. Clark and Oliver were agents for Dunton Realty and for S & R in negotiating the sale, and that they were negligent in representing the incorrect boundary lines to the church. It determined that the church had a right to rely on these representations, did in fact rely thereon, was induced thereby to purchase the property, and was consequently damaged. The trial court concluded that S & R and Dunton Realty were jointly and severally liable.

First, S & R argues that, assuming a misrepresentation of the legal description and boundary lines was made, it cannot be held liable under any theory of agency because (1) Mr. Merkle did not deal with the purchasers directly and Messrs. Clark and Oliver were never its agents, and (2) it was the agent for the seller and, as such, owed no duty to the purchaser. We disagree.

In a multiple listing situation, it has been held that in effecting a sale, the selling agency is an authorized subagent of the listing broker, who is the seller's agent for the purpose of finding a purchaser. *Frisell v. Newman,* 71 Wn.2d 520, 529, 429 P.2d 864 (1967). Here, the trial court properly determined that Dunton Realty, the selling agency, was a subagent of the listing broker, S & R.

Although S & R, the listing broker, is an agent of the seller charged with the attendant duties arising from that agency, it is nevertheless liable to a third party for misrepresentation of boundary lines of property offered for sale.[2] In *Dixon v. MacGillivray,* 29 Wn.2d 30, 185 P.2d 109

---

[2] S & R relies on *Brink v. Martin,* 50 Wn.2d 256, 310 P.2d 870 (1957). There, the court held that the listing broker and his agent were not negligent in failing to attach a legal description to an earnest money agreement because the owner refused to provide one; and as agents of the owners and not the prospective purchasers, they owed no duty to the latter to prepare an enforceable contract. We find that *Brink* is distinguishable and not controlling. Here, the action is based on misrepresentation of the land area offered for sale, not breach of a fiduciary duty

(1947), the court held the listing broker liable to the purchaser for misrepresenting the property for sale. It stated, at page 35:

> One who indicates to a purchaser that the land sold has a certain area, when, as a matter of fact, the area is less than represented, is responsible to the purchaser in damages or in an action of rescission, even though he acted under an honest mistake without any intent to deceive.

It is clear that an agent may be liable to third persons for the conduct of its subagent. Restatement (Second) of Agency § 362 (1958). A subagent subjects the principal agent to liability within the sphere of activity in which the subagent is authorized to act. Restatement (Second) of Agency § 362, comment *a* (1958). Here, the subagent, Dunton Realty, was authorized to offer for sale the subject property and in this regard was authorized to transmit to the prospective purchasers the legal description supplied by S & R through its agent, Mr. Merkle. The fact that Mr. Merkle did not personally point out the erroneous boundary lines or directly supply plaintiff with the incorrect legal description does not absolve S & R of liability. *See* Restatement (Second) of Agency § 257 (1958).

Second, S & R contends that the testimony of the real estate appraisers is insufficient to support the award of $28,000 damages. We disagree.

■ The measure of damages for misrepresentation of the land area in a sales transaction is the difference between the market value of the property as represented and the market value of the property as it actually was at the time of sale. *Grosgebauer v. Schneider,* 177 Wash. 43, 31 P.2d 90 (1934); *Dixon v. MacGillivray, supra.* This is "the benefit of the bargain measure" as opposed to the

---

owed by virtue of any agency between the church and the listing broker. We agree with the decision in *Brink* and recognize that the listing broker is the seller's agent. However, the listing broker is also liable for misrepresentation of property to the purchaser.

"out–of–pocket test" and is generally the appropriate measure of damages in this type of case. *See Salter v. Heiser,* 39 Wn.2d 826, 832, 239 P.2d 327 (1951).

Mr. Caddis, a qualified appraiser, testified that Parcels A, B and C (even speculating as to use) had a fair market value of $59,000, and that the property actually purchased, Parcel C, was worth $26,000 at the time of sale. Mr. Peyton, another appraiser, agreed with the Caddis appraisal in most respects. The difference between these values is $33,000; the trial court awarded $28,000. The award was well within the testimony. We find no error.

Finally, on cross appeal, Dunton Realty contends it is entitled to be indemnified by S & R because Mr. Merkle, S & R's agent, negligently provided the incorrect legal description. Dunton Realty relies on Restatement (Second) of Agency § 256 (1958), which provides:

> If a principal knows facts unknown to a servant or other agent and which are relevant to a transaction which the agent is authorized to conduct, and, *because of his justifiable ignorance,* the agent makes a material misstatement of facts, the principal:
> (a) is subject to liability for an intentional misrepresentation, if he believed the agent would make the statement, or for a negligent misrepresentation, if he had reason to know the agent would make the statement.

Comment *c* states that this rule is based

> upon the negligent or intentionally wrongful conduct of the principal. This is true whether or not the agent knows or should know the facts, but the personal responsibility of the principal is more obvious *where the agent makes the statement both innocently and in the exercise of due care.*

(Italics ours.)

Here, the trial court found that Dunton Realty, through its salesmen, Clark and Oliver, was also negligent in failing to ascertain the actual property for sale. We agree with the trial court. Dunton Realty failed to exercise due care and was not *justifiably ignorant* of the incorrect legal description furnished by Mr. Merkle.

The legal description of the property for sale in the Multiple Listing Service was a partial description of *only* Parcel C. There was nothing in the listing service designating the property by parcels nor indicating Parcels A and B were part of the sale. While Mr. Clark had a "hunch" that there was something wrong with the description, at no time did he attempt to ascertain whether all three parcels were in fact owned by the sellers shown in the listing service. Even a cursory examination of the legal descriptions should have aroused further inquiry. It is clear from the record that there was a misunderstanding, albeit an honest one, between the two brokers as to exactly what property was *being sold*. However, *it was incumbent* upon the subagent, the selling agency, in light of the descriptions that were furnished, to exercise due care to ascertain the precise property actually for sale.

Where a real estate broker fails to exercise reasonable care and skill, he is liable to his client for damages. *Mattieligh v. Poe,* 57 Wn.2d 203, 205, 356 P.2d 328, 94 A.L.R.2d 464 (1960). Hence, Dunton Realty is not entitled to indemnification from Sherwood & Roberts.

Further, the trial court was of the view that Dunton Realty and S & R were equally at fault in contributing to plaintiff's damage. That determination is supported by substantial evidence and will not be disturbed. The trial court did not err in denying the cross claims of Dunton Realty and Sherwood & Roberts.

Affirmed.

MUNSON, C.J., and McINTURFF, J., concur.