**Max BEVINS and Johnson-Bevins Inc., d/b/a Star Realty, Appellants,**

v.

**David L. BALLARD and Linda K. Ballard, Appellees.**

**No. 4571.**

Supreme Court of Alaska.

Nov. 19, 1982.

---

Fredrick P. Pettyjohn, Anchorage, for appellants.

Saul R. Friedman, Hedland, Fleischer & Friedman, Anchorage, for appellees.

Before RABINOWITZ, C.J., CONNOR, BURKE, and MATTHEWS, JJ., and DIMOND, Senior Justice.*

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11 of the Constitution of Alaska, and Alaska R.Admin.P. 23(a).

## OPINION

BURKE, Justice.

This is an appeal from a judgment holding a real estate broker liable for certain misrepresentations made in the course of a real estate transaction.

### A. Facts

On February 3, 1975, David and Linda Ballard purchased a lot with an unfinished dwelling from Josephine, Patricia, and William Ferris. Prior to their purchase, certain representations were allegedly made to the Ballards regarding the adequacy of a well on the property. The purchaser, David Ballard, who had previous experience as a general contractor, attempted to complete the existing well on the property. He installed a pump and piping from the well to the house. The well, however, failed to provide sufficient water. As a result, the Ballards were forced to haul water to their property. They subsequently incurred expenses of $6,935.00 in deepening the well to an adequate level.

Believing themselves the victims of fraudulent misrepresentations, the Ballards sued the sellers, the broker (Bevins), and an employee of the broker (Lucas). Their complaint alleged, in part, intentional and negligent misrepresentation.[1] In addition, it alleged that Bevins and Lucas had a duty to check the well's condition, that Lucas knew there was no functional well, that Bevins was vicariously liable for Lucas's acts, and that the Ferrises were vicariously liable for the actions of their agents, Bevins and Lucas. The complaint did not explicitly allege innocent misrepresentation.

After the close of plaintiffs' evidence, the trial court dismissed certain counts of the complaint. First, the court ruled that the broker did *not* have a general duty to inspect the premises. Second, it held that the broker was *not* vicariously liable for the acts of his employee, Lucas. In a subsequent written decision, the court further ruled that Lucas was not liable. It then held that Bevins and the sellers were jointly and severally liable, each with a right of contribution from the other for any payment in excess of a pro rata share. While both the sellers and the broker filed timely notice of appeal, only Bevins, the broker, pursues his appeal.

The basis of the broker's liability is not clear. The court found that the sellers were the source of the representation that the well was "good," i.e., capable of supplying the reasonable water needs of the residents. It ruled that the broker had a right to rely on the representations, and thus the sellers were liable (as principals) for the act of Bevins (their broker and thus their agent) who passed on the misrepresentation. The court also found that Lucas passed on the representation intending that

---

1. The complaint made the following factual allegations:

 (a) Bevins personally inspected the property;
 (b) sellers told Bevins that there was a well drilled on the property;
 (c) sellers failed to disclose to Bevins the incomplete nature of the well, with the knowledge and intent that Bevins would tell potential buyers there was a well;
 (d) sellers represented to the broker's employee that the well was finished, held 36 feet of standing water, and was capable of supporting the reasonable water needs of residents of the house;
 (e) sellers made those representations with the intent that Lucas would tell the buyers;
 (f) Lucas did so represent to the Ballards;
 (g) the representations were false;
 (h) Lucas made the representations with the knowledge they were false;
 (i) sellers made the representations knowing they were false, for the purpose of deceiving plaintiffs and inducing them to buy;
 (j) plaintiffs did rely and were induced; and,
 (k) plaintiffs were unable to discover the defect until after purchase.

 In addition, the following legal allegations were made:
 (1) Bevins owed plaintiffs a duty to investigate the accuracy of the sellers' representations, and breached that duty (this count was dismissed at the close of plaintiffs' evidence);
 (2) Lucas (broker's employee) owed plaintiffs a duty to investigate, and breached that duty;
 (3) Bevins was vicariously liable for acts of his employee Lucas (this count was dismissed at the close of plaintiffs' evidence); and,
 (4) sellers were vicariously liable for the acts of their agents, Bevins, the broker, and his employee, Lucas.

it be relied upon; Bevins admitted to the same intent. The court further found that the Ballards did so rely, and that their reliance was justified.

Although the court earlier concluded that Bevins had no general duty to inspect, it subsequently held that a duty of inquiry arose when Lucas asked Bevins, on behalf of the Ballards, about the adequacy of the well. The court concluded that Bevins acted unreasonably by simply assuring Lucas that it was a "good well" rather than by investigating. Thus Bevins' liability appears to rest on a negligence theory.

Certain facts are not contested:
1. The listing mentioned a 100 foot well.
2. The well proved to be incomplete, i.e., inadequate to support reasonable water needs.
3. Bevins, the broker, testified that the listing of a well would reasonably lead buyers to assume the well was "good," i.e., adequate.
4. The Ballards relied on the listing and representations that the well was "good."
5. Both Lucas and Bevins intended that the Ballards so rely.

As to the source of the misrepresentation, Bevins testified that he would not have written it on the listing unless it came from the sellers. The sellers, however, denied telling him about it; they testified that Bevins must have misunderstood. The court believed Bevins, concluding that the sellers were the original source of the representation.

### B. The Broker's Liability

There are three types of misrepresentations: intentional, negligent, and innocent. While the Ballards did assert an intentional misrepresentation claim against the sellers, they did not do so against Bevins or Lucas.

Thus, we need address only the negligent and innocent misrepresentation claims in this appeal. Bevins' liability to be sustained, must rest on one of these two theories.[2]

### 1. Negligent Misrepresentation

The Ballards' third claim for relief stated a cause of action for negligence against Bevins. That claim alleged that Bevins had a duty to "take reasonable steps to determine whether or not the well ... was a completed well" and had sufficient capacity to support a purchaser's reasonable water needs, that Bevins breached that duty, and that as a direct and proximate result of Bevins' breach the Ballards purchased the property believing the well was completed. As noted, the trial court subsequently dismissed that claim, and the Ballards did not appeal. In its final opinion, however, the trial court imposed liability on grounds that Bevins had a "duty to inquire of the sellers whether the well was, in fact, 'a good well.'" Bevins argues that the court thus held him negligent even though negligence was dismissed from the case and, further, that he was prejudiced thereby because dismissal of the third claim led him to forego a negligence defense.

We recognized the tort of negligent misrepresentation in *Transamerica Title Insurance Co. v. Ramsey,* 507 P.2d 492 (Alaska 1973), and *Howarth v. Pfeifer,* 443 P.2d 39 (Alaska 1968). Under this theory, Bevins could have been liable for breaching his duty to provide accurate information once he undertook to speak. In determining whether such a duty exists, one must consider: (a) whether the defendant had knowledge, or its equivalent, that the information was desired for a serious purpose and that the plaintiff intended to rely upon it; (b) the foreseeability of harm; (c) the degree of certainty that plaintiff would suf-

---

**2.** Bevins' liability could be based on a vicarious liability for the acts of his employee Lucas. As we noted in *Black v. Dahl,* 625 P.2d 876, 879 n. 3 (Alaska 1981), a real estate broker can be liable under the doctrine of respondeat superior for the acts of his or her sales-people. However, two of the rulings below preclude resting liability on such a basis. First, at the close of the Ballards' evidence, the trial court dismissed the eighth claim for relief, which had asserted that Bevins was vicariously liable. Second, in its written opinion, the trial court found in favor of Lucas, the salesman. Thus there is no underlying liability for which Bevins could be held vicariously responsible. The Ballards have not appealed these rulings.

fer harm; (d) the directness of causation; and (e) the policy of preventing future harm. *Howarth v. Pfeifer,* 443 P.2d at 42; *see Transamerica Title Insurance Co. v. Ramsey,* 507 P.2d at 494–95.[3] In the land sales context, such a duty can arise when a broker becomes aware of suspicious facts regarding his or her representations, or when a buyer makes an affirmative inquiry and the broker fails to check the accuracy of his subsequent responding representation, or when a court determines that public policy requires brokers to undertake certain functions. *See, e.g., First Church of the Open Bible v. Cline J. Dunton Realty, Inc.,* 19 Wash.App. 275, 574 P.2d 1211 (1978).

■ We believe, however, that the trial court's dismissal of Ballards' third claim for relief, which was their only negligence claim against Bevins, precludes the broker's liability from resting on a negligent misrepresentation theory.[4] While Alaska Rule of Civil Procedure 15(b) allows post-judgment amendments to conform the issues tried to

the evidence, and further provides that the failure to so amend "does not affect the result of the trial" on those issues, the rule sets as a threshold the requirement that such issues be "tried by express or implied consent of the parties." We do not believe that this condition was met in the case at bar. Subsequent to the dismissal neither party argued *negligent* misrepresentation in their trial briefs. The court and parties treated the case as one involving innocent misrepresentations. Bevins neither expressly nor impliedly consented to trying a negligence claim. Accordingly, Bevins' liability cannot rest on a negligent misrepresentation theory.

## 2. Innocent Misrepresentation

The case went forward against Bevins on an apparent theory of innocent misrepresentation, evidenced by the colloquy quoted in note 4 and the arguments advanced in the trial briefs.[5] The tort of innocent mis-

---

**3.** In *Transamerica Title,* we upheld submitting the negligence issue to the jury where a title insurance company failed to inform a client that a power of attorney, upon which she was relying in asserting her authority to sell the property, had been revoked. Although the title company was unaware of the revocation, that information was readily available to it. We concluded that the title insurer knew that the seller, its client, desired information about her legal capacity to sell the land, that she intended to rely on that information, and that there was foreseeable harm to her should she be poorly advised. We concluded that the jury could find that the title company had a "duty to speak carefully." We rejected any distinction between the nonfeasance of the title company and the misfeasance in the *Howarth* case. 507 P.2d at 494–95.

In *Howarth,* a vendor sought damages for the alleged negligent misrepresentation by the defendant insurer that a purchaser of vendor's property had obtained fire insurance on the property. We held that assuming the presence of the essential factors establishing a duty of care, those engaged in the insurance business are required to speak with reasonable care.

**4.** That the court intended to dismiss negligence claims from the case is further evidenced by the following colloquy:

THE COURT: ... I feel that it's the third claim for relief that you seek thereby to impose upon realtors a burden that does not exist except in extraordinary circumstances.

That is when there's been—when there has been evidence adduced as to the duty of a realtor to inquire arising from some circumstances directing the attention of a reasonable prudent realtor to some—some—something unusual. In this case it seems to me that this was just an ordinary transaction. That it's rural property, most of which does require that it be serviced by a well. It is incomplete, and if I accept the evidence as it now stands, that it was represented that there was a good well, that that's the end of the matter, that there's no duty on the realtors to go further and inquire whether that is the actual fact. You know, there's nothing unusual about that well that would alert the ordinary prudent realtor of the need to do something about it. To check it out.

MR. FRIEDMAN: Well, if the court finds that there was no duty, then they can't obviously be negligent. But I still ask the court ....

THE COURT: They—well, they still can be— the defendants still could be—they made the representation, which is—facts show was not true.

MR. FRIEDMAN: Correct.

THE COURT: So that they can be—they can be held liable for having made the same. But not on—not on—(indiscernible) negligence— or negligence theory.

**5.** The *elements* of innocent misrepresentation were alleged to a sufficient degree. Paragraph 8 of the Ballards' first claim for relief makes

representation is defined by section 552C(1) of the Restatement (Second) of Torts (1977) as follows:

> One who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

*Id.* The Restatement leaves open the question of whether such a cause of action lies against real estate brokers. *Id.* § 552C, Comment g.

 We have recognized a cause of action against the *owner* of realty who innocently misrepresents its condition to the purchaser. *Cousineau v. Walker,* 613 P.2d 608 (Alaska 1980). In *Cousineau,* we granted rescission and restitution to a purchaser where the seller made false statements concerning the highway frontage and gravel content of the purchased land. In so doing, we held that an owner guilty of even innocent misrepresentation could not hide behind the doctrine of caveat emptor. *Id.* at 614–16. This is so because owners are presumed to know the character and attributes of the land conveyed and buyers are consequently entitled to rely on the seller's reasonable representations. *See Sorenson v. Adams,* 98 Idaho 708, 571 P.2d 769, 776 (1977), *quoted in Cousineau v. Walker,* 613 P.2d 608, 615 n. 14 (Alaska 1980). The owner of land must therefore be both truthful and informed in making any representations, for fraud includes the pretense of knowledge where there is none. *Spargna-*

pani v. Wright, 110 A.2d 82, 84 (D.C.App. 1954).

The question presented in this case is whether or not liability for innocent misrepresentation should extend to the owner's agent, the real estate broker, where that party serves as a conduit for the owner's misinformation. Most courts addressing this issue recognize a cause of action by the purchasers of property against the broker for the latter's innocent misrepresentation.[6]

An illustrative case is *Spargnapani v. Wright,* 110 A.2d 82 (D.C.App.1954). There, both the seller and broker were held liable for representing that a house could be heated for a little more than $100.00 per year, when a defect in the boiler made it impossible to heat the house at all. *Id.* at 85. The broker had merely passed on the seller's information, and neither defendant had knowledge of a defect. Nevertheless, the court sustained liability:

> If the broker innocently represented that the heating plant was in workable condition and was mistaken in that representation, or made the representation without knowing whether it was true or false, the injured party may recover in an action for fraud.

> ... We may assume that the broker was guilty of no deliberate deception and had no actual knowledge of the concealed defect. But on defendants' own evidence their selling agent did not disclaim such knowledge .... The representation ... was flagrantly inaccurate, since the defect ... made it impossible to heat the house at all .... "Fraud includes the

the necessary allegation concerning Bevins' scienter. Paragraph 2 of the fifth claim for relief alleged that Bevins' agent passed on the representation with the intent to cause action in reliance thereon. Finally, paragraph 15 of the first claim for relief alleged actual reliance. In light of this, plus the court's and the parties' arguments concerning Section 552 of the Restatement, we conclude that Bevins was "adequately notified" that the Ballards were asserting a cause of action based on innocent misrepresentations. *See Clary Ins. Agency v. Doyle,* 620 P.2d 194, 201 (Alaska 1980).

6. *Sodal v. French,* 35 Colo.App. 16, 531 P.2d 972, 973 (1974); *Spargnapani v. Wright,* 110 A.2d 82, 85 (D.C.App.1954); *Pumphrey v. Quillen,* 165 Ohio St. 343, 135 N.E.2d 328, 331 (1956); *Berryman v. Riegert,* 286 Minn. 270, 175 N.W.2d 438, 442 (1970); *Lawlor v. Scheper,* 232 S.C. 94, 101 S.E.2d 269, 271 (1957); *Polk Terrace, Inc. v. Harper,* 386 S.W.2d 588, 593 (Tex.App.1965). *Contra Lyons v. Christ Episcopal Church,* 71 Ill.App.3d 257, 27 Ill.Dec. 559, 389 N.E.2d 623, 625 (1979).

pretense of knowledge when knowledge there is none."

*Id.* at 83–84 (citations omitted).

■ The policy favoring liability for innocent misrepresentation is found on a recognition that purchasers should be entitled to rely on a broker's representations. As one opinion notes:

> Real estate brokers and their agents hold themselves out to the public as having specialized knowledge with regard to housing, housing conditions and related matters. The public is entitled to and does rely on the expertise of real estate brokers in the purchase and sale of its homes. Therefore there is a duty on the part of real estate brokers to be accurate and knowledgeable concerning the product they are in the business of selling— that is, homes and other types of real estate. Courts have held in many cases that purchasers are entitled to rely on real estate brokers' statements.

*Lyons v. Christ Episcopal Church,* 71 Ill. App.3d 257, 27 Ill.Dec. 559, 389 N.E.2d 623, 628 (1979) (dissenting opinion).

■ We find this reasoning persuasive. Parties to real estate transactions frequently do not deal on equal terms. Real estate brokers are licensed professionals, possessing superior knowledge of the realty they sell and the real estate market generally. Prospective purchasers recognize this expertise and tend to rely on a broker's representations. Just as purchasers are entitled to rely on an owner's representations, *Cousineau v. Walker,* 613 P.2d 608 (Alaska 1980), purchasers should be entitled to rely on the broker's representations. Any other rule would permit brokers to use misleading statements in selling the property, yet remain immune from liability by simply remaining ignorant of the property's true characteristics. Accordingly, we hold that a purchaser who relies on a material misrepresentation, even though innocently made, has a cause of action against the broker originating or communicating the misrepresentation. *See* Restatement (Second) of Torts § 552C(1) (1977).

In our view, the consequences of recognizing a cause of action in this situation are entirely beneficial. The presence of a cause of action against the broker would tend to lessen the likelihood of transactions tainted by misinformation and confusion. Additionally, recognizing a cause of action against the broker would provide another source of recovery to the purchaser of defective property. Frequently, the owners may move away, leaving the broker as the only reachable defendant. As between the broker who communicated the misrepresentation, and the purchaser whose only fault was to rely on the broker, we think it preferable that the broker bear any loss caused by misrepresentation. Brokers, in turn, can protect themselves from liability by investigating the owner's statements, or by disclaiming knowledge, by requiring the seller to sign at the time of listing a statement setting forth representations which will be made, certifying that they are true and providing for indemnification if they are not.[7] *See Goldman v. Hart,* 134 Ga. App. 422, 214 S.E.2d 670 (1975).

■ Having determined that a cause of action in innocent misrepresentation exists, it is apparent that the judgment below must be affirmed. Bevins does not contest that the listing he prepared mentioned a 100 foot well, that this listing would reasonably lead buyers to assume the well was good, that the Ballards so relied, and that the well was, in actuality, inadequate. These facts establish liability under an innocent misrepresentation theory. *See* Restatement (Second) of Torts § 552C(1) (1977). The decision below is therefore AFFIRMED.[8]

COMPTON, J., not participating.

---

**7.** Some listing agreements contain indemnification provisions, entitling the broker to indemnity from the owner should the broker's communication of the owner's representations engender liability. *See, e.g., Barnes v. Lopez,* 25 Ariz.App. 477, 544 P.2d 694, 698–99 (1976).

**8.** This case is distinguishable from *Stepanov v. Gavrilovich,* 594 P.2d 30 (Alaska 1979), where-

CONNOR, Justice, with whom RABINOWITZ, Justice, joins, dissenting in part.

I dissent from the holding that an action for innocent misrepresentation should be permitted against the real estate broker.

When a realtor acts as a mere conduit for passing on information supplied by the seller, he should be under no duty independently to verify that information unless he has reason to believe the information to be false. See *Lyons v. Christ Episcopal Church,* 71 Ill.App.3d 257, 27 Ill.Dec. 559, 389 N.E.2d 623, 625 (1979). Allowing an innocent misrepresentation action against the broker in such circumstances is quite close to imposing strict liability. There is no reason to make the broker the "insurer" of the seller's representation.

Although we recognized a claim based on innocent misrepresentation in *Cousineau v. Walker,* 613 P.2d 608 (Alaska 1980), that case is distinguishable from a case between a buyer and a broker. Sellers who make representations about their property should be held to the accuracy of the representations, as they are normally in the best position to know the facts. But a broker often has little personal knowledge of the property which he offers for sale. I see no reason to make the broker the guarantor of representations emanating from the seller. I would hold that innocent misrepresentation is not available as a cause of action by the buyer against the broker. Thus, I would reverse the judgment of the superior court. I agree with the balance of the majority opinion.

in we affirmed a judgment in favor of a small "subdivider," in a damage action founded upon the subdivider's innocent failure to disclose undetected permafrost conditions in lots sold to the plaintiffs.

Subdividers are subject to, and protected by, the Alaska Land Sales Practices Act, AS 34.55. Under the act, a subdivider is liable for material misrepresentations or omissions affecting the land, "unless in the case of an untruth or omission it is proved that . . . the person offering or disposing of subdivided land did not know and in the exercise of reasonable care could not have known of the untruth or omission." AS 34.55.030(a). Thus, a "subdivider" is not liable for innocent misrepresentations. Such liability is barred by the statute. This protection, however, is not available to the defendants in the case at bar, since they are not "subdividers."