IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PAULA S. NEIS, Trustee of the Daniel L. NEIS Revocable Trust, and Paula S. NEIS Individually, | ) ) ) ) | No. 38877-8-III (Consolidated with No. 39064-1-III) |
| Appellants, | ) ) | |
| v. | ) ) | |
| HOWARD WOOLLETT, and PETRIA WOOLLETT, husband and wife, | ) ) ) | UNPUBLISHED OPINION |
| Respondents, | ) ) | |
| JOHN D. FRASER and GLORIA RAE FRASER, Husband and wife, | ) ) ) | |
| Appellants. | ) | |

STAAB, J. — Howard and Petria Woollett (the Woolletts) sold Paula Neis their residence situated on Newman Lake (the property). The property was described as including a shed and carport located near a parking area. The legal description for the property included a non-exclusive easement over the neighboring property owned by Gloria and John Fraser (the Frasers). In connection with the sale, the Woolletts provided Neis a "Seller's Disclosure Statement" "Form 17" representing that there were no "encroachments, boundary agreements or boundary disputes" related to the property.

Shortly after moving in, Neis discovered that the shed, carport, and parking area were located on property owned by the Frasers but for which she had an easement. Neis sued the Woolletts for breach of contract and the torts of negligent and intentional misrepresentation. The Woolletts then named the Frasers as third-party defendants and sued them for adverse possession, claiming fee simple ownership of the easement area where the shed, carport and parking area were located.

Following a bench trial, the court dismissed the Woolletts' claims for adverse possession against the Frasers, finding fatal defects in their claim. The court also entered a judgment in favor of the Woolletts, concluding that Neis had failed to prove each of her causes of action. The court ultimately awarded the Woolletts attorney fees against Neis and denied the Frasers' request for attorney fees against the Woolletts.

Neis and the Frasers appeal. Neis argues that the court erred when it ruled against her on the issues of negligent and intentional misrepresentation. She also contends that the court erred in granting the attorney fee award against her. The Frasers argue that the court erred in denying their request for attorney fees against the Woolletts. While we find the court's findings and conclusions deficient, we affirm the judgment against Neis for her misrepresentation claims.

BACKGROUND

The Woolletts purchased their property in 1985. The property is in "Lot 7", which contains four tax parcels. All four tax parcels abut Newman Lake on the south. All four

2

parcels are accessed by a right of way easement located on property owned by the

Frasers. There was an existing retaining wall and shed near the driveway when the

Woolletts purchased the property and they placed a carport on the parking area sometime

in the late 1990's. The Woolletts lived on the property year-round until they sold it to

Neis in 2017.



Clerk's Papers (CP) at 503 (showing Lot 7). The Neis property is Tax Parcel

56034.0509, the far-right parcel, while the Fraser property is Tax Parcel 56034.0508,

shaped like a "T." The described easement runs along the north portion of the Fraser

property from west to east (hereinafter the "easement property"). The Woolletts' shed

and carport (not pictured) are situated either wholly or partially on that part of the

Frasers' property that sits north of the Woolletts' former property.

3

At some point in time, the Frasers commissioned a survey of their property including the easement area.[1]  The survey revealed that the Woolletts' retaining wall, carport, parking area, and shed were situated on the easement area owned by the Frasers. After the survey was conducted, John Fraser placed stakes in the ground marking the common boundaries between his property and the Woolletts' property.  Howard Woollett knew the stakes were there and considered them as the Frasers' assertion of their common boundary.  The stakes were in the ground when the Woolletts sold the property to Neis.

Shortly before selling their property, the Woolletts offered to purchase the easement area from the Frasers.  In a 2016 letter from the Woolletts to the Frasers, the Woolletts offered to purchase the easement area for $5,000 in addition to $1,550 worth of repair work and maintenance Mr. Woollett had performed for the Frasers.  The sale of the easement area was never completed and following the sale of the property to Neis, the Woolletts demanded the value of the repair work and maintenance, a total of $1,550, back from the Frasers.

---

[1] The witnesses agreed that there was a 2009 survey of the property but John Fraser also testified that there was a 1996 survey marking the boundary lines.  Howard Woollett did not recall this survey.

4

No. 38877-8-III
*Neis, et al v. Woollett, et al*

A. *Sale to Neis*

In July 2017, the Woolletts sold their property to Neis. In connection with the transaction, the Woolletts provided Neis with Form 17 pursuant to RCW 64.06.020. In response to the question: "Are there any encroachments, boundary agreements, or boundary disputes?" The Woolletts answered NO. Ex. 108.

Included in the sale to Neis were the shed and the carport. Within two weeks of purchasing the property, Neis became aware that the shed and carport were located at least partially on the easement property owned by the Frasers.

B. *Lawsuit*

In 2019, Neis sued the Woolletts for breach of contract and intentional misrepresentation/fraud.[2] Neis alleged that the Woolletts represented that the property being sold included the easement property where the parking area, shed, and carport were located, but breached the contract by failing to deliver fee title to this property. Neis also alleged that the Woolletts knowingly misrepresented in Form 17 that there were "'no encroachments, boundary agreements or boundary disputes.'" Clerk's Papers (CP) at 4.

---

[2] The terms intentional misrepresentation and fraud are used interchangeably here and in caselaw. *E.g.*, *Carlile v. Harbour Homes, Inc.*, 147 Wn. App. 193, 204-05, 194 P.3d 280 (describing the claim as "intentional misrepresentation (fraud)"); *Poulsbo Group, LLC v. Talon Dev., LLC*, 155 Wn. App. 339, 345-46, 229 P.3d 906 (2010) (using the term "intentional misrepresentation"); *Steineke v. Russi*, 145 Wn. App. 544, 563, 190 P.3d 60 (2008) (using the term "fraud").

The Woolletts admitted filling out Form 17 in their answer, but denied making misrepresentations about the property being sold. The Woolletts then brought a third-party complaint to quiet title against the Frasers for the entire easement area. The Woolletts alleged that their possession of the easement area was exclusive and adverse to other rights and that they were entitled to a decree quieting title in favor of Neis.

Prior to trial, the Frasers notified the Woolletts that their third-party complaint was defective because, if successful, it would landlock three parcels in Lot 7, and they had failed to name the other two parcel owners in Lot 7 who had interests in the disputed easement area.

### C. Trial

The case proceeded to bench trial. Howard Woollett testified consistent with the facts above. He provided testimony in support of his third-party claim for adverse possession. Woollett also testified that prior to the survey in 2009, he believed he owned the property where he parked his vehicles and placed a carport. He also testified that prior to selling the property he never spoke with Neis. Woollett stated that the carport was a metal structure that sits on the ground and was part of the sale to Neis. After the sale to Neis closed, Mr. Woollett met Neis at the property to show her around. During this visit, he pointed to the corner of the shed and told Neis there was a stake in the ground marking the easement boundary.

6

John Fraser also testified about the prior surveys and the stakes in the ground. He indicated that he believed the easement gave the Woolletts the right to park their cars on the easement property and keep the shed on the property, but thought that the carport was not authorized by the terms of the easement. There was no testimony of anyone ever telling the Woolletts to move the retaining wall, carport, or shed, or advising the Woolletts that these improvements were encroaching on the property rights of other easement owners. Fraser admitted that he never told Neis to stop parking on the easement property and never asked her to move the shed or the carport.

Neis testified as well. She indicated that when she read Form 17 provided by the Woolletts she noted that there had been a prior boundary survey. She stated that she relied on the Woolletts' representation that there were no boundary disputes. She testified that she would not have bought the property if she had known that the carport was located on the easement because she planned to build a garage there. On cross-examination Neis admitted that prior to purchasing the property no one told her that the Woolletts owned the easement property or that the easement property was part of the purchase. She also admitted there were no disputes over the ownership of the property described in the purchase and sale agreement, and that the Woolletts' representations in Form 17 were specific to the property described in the purchase and sale agreement. Finally, she admitted that since purchasing the property, no one has prevented her from using the shed, carport, or parking area.

Neis also presented expert testimony from Amy Chitwood, a real estate appraiser. Chitwood testified that the value of the easement area Neis thought she was purchasing when she bought the property was $27,800. Chitwood also testified that a property with a boundary line dispute has diminished value, but she did not provide an opinion on how much the value would be reduced. She did not testify about any value difference for properties with encroachment issues.

### D. Woolletts' Claim for Adverse Possession (Woollett v. Fraser)

At trial, the Woolletts pursued their adverse possession claim against the Frasers and after the close of evidence, Neis and the Frasers moved for dismissal of the third-party complaint. In response, to the motion to dismiss, the Woolletts moved to amend their third-party complaint and, pursuant to CR 15, the court orally granted amendment of the complaint to conform to evidence.

After trial, Neis and the Frasers moved for reconsideration of the court's denial of their motion to dismiss the third-party complaint. The court reversed its bench ruling and granted Neis' and the Frasers' motion for reconsideration. The court ruled that the Woolletts had not moved to timely amend the third-party complaint, that they had failed to join indispensable parties, and lacked standing to pursue a claim of adverse possession since they no longer owned the property. The court therefore dismissed the Woolletts' third party complaint with prejudice.

8

*E. Court's Ruling (Neis v. Woollett)*

The court also concluded that Neis had failed to prove any of her claims and entered findings of fact and conclusions of law to support its decision. With respect to Neis' claim for breach of contract, the court found that Neis had failed to prove that the Woolletts misrepresented the property being sold. Specifically, the court found that the Woolletts and Neis did not communicate prior to the sale, and Neis did not ask the Woolletts where the property boundaries were located. Moreover, several documents provided to Neis before the sale included the legal description of the property being sold. In Form 17, the Woolletts disclosed that there was a boundary survey for the property and that the property was accessed by an easement. Neis received a copy of the plat map showing that a portion of the Frasers' property ran between the northern boundary of the Woolletts' property and the road.

Prior to the sale, Neis did not attempt to determine where the boundary lines were located. She was not told that the area where the shed and parking area are located were part of the property being sold. She did not hire a surveyor and did not ask to see the boundary survey.

The court also dismissed Neis' tort claims for misrepresentation. The court found that the representations made in Form 17 pertained only to the property legally described in the sale documents. The court's conclusions are somewhat confusing, but suggest that Neis did not ask the Woolletts where the boundary lines were located, but knew there was

9

a plat map and prior survey and could have ascertained the property boundaries had she attempted to do so. The court concluded that Neis had failed to establish breach of duty or causation.

The court also found that "Neis did not prove any damages due to any actions or inactions by [the] Woolletts." CP at 626-27. Neis has not been prevented from using the easement area nor has she been told to move any of the improvements.

Finally, the court noted Neis' burden to prove each element of fraudulent misrepresentation by clear, cogent, and convincing evidence, and generally concluded that Neis had failed to prove "the elements for each of these claims" without specifying which elements were not proved. CP at 628.

*F. Attorney Fees*

The trial court originally ordered each party to pay its own costs and attorney fees. On the Woolletts' motion for attorney fees, the court changed course and awarded fees against Neis in favor of the Woolletts.

In the court's order of dismissal of the third-party complaint, the trial court indicated it would award attorney fees to the Frasers. The Frasers then brought a motion for attorney fees, which the Woolletts contested. The court then reversed course and issued an order denying the Frasers their attorney fees against the Woolletts. In doing so, the Court noted that "there is not an entitlement to attorney fees pursuant to RCW

7.28.083" and found that "[a]ttorney fees are not necessary or appropriate and would not be equitable or just in this case." CP at 870.

### G. *Appeal*

The Woolletts initially appealed the trial court's ruling dismissing the adverse possession case brought against the Frasers but later withdrew their appeal. *See* Court of Appeals Letter Ruling in Case No. 38878-8-III (July 28, 2022). Neis timely appealed the court's decision in her case against the Woolletts. While her appeal was pending, the court issued its decision to award attorney fees to the Woolletts.

The Frasers timely appealed the denial of attorney fees to them against the Woolletts.

### ANALYSIS

1. TORT CLAIMS FOR MISREPRESENTATION

For purposes of our analysis below, it is import to distinguish between Neis' claim that the Woolletts breached the contract by misrepresenting the property being sold, and her tort claims for making misrepresentations in Form 17. In her breach of contract claim, Neis alleged that the Woolletts misrepresented, either directly or indirectly, that the property being sold included fee simple title to the disputed easement area. The trial court concluded that Neis did not prove this claim and Neis is not appealing this conclusion. Thus, whether the Woolletts misrepresented the property being sold is not before this court.

11

In her tort claims, Neis claimed that the Woolletts misrepresented that there were no encroachments, boundary agreements, or boundary disputes pertaining to the property sold to Neis. The location of the property's boundaries and whether there was a boundary dispute or encroachments are two different claims.

Neis assigns error to portions of the court's findings of facts 22 and 23 as unsupported by the evidence, and several of the court's conclusions of law. She also challenges the findings generally as inadequate because they failed to address the elements of her claims. She contends that the facts supporting her claims of misrepresentation were undisputed and the trial court erred in concluding Neis failed to prove these claims. She suggests that we can decide these issues as a matter of law.

While we agree that the findings and conclusions should have included more details, we affirm the trial court's dismissal of Neis' tort claims. At trial, Neis had the burden to prove her tort claims. The only way she can prevail on appeal is by demonstrating that the evidence on every element of each of her claims is undisputed. She fails to do so. The evidence supports the court's findings and the findings support the court's conclusion that Neis failed to prove each element of misrepresentation by clear, cogent, and convincing evidence.

A. *Standard of Review*

Following a bench trial, we review the trial court's findings of fact and conclusions of law. Unchallenged findings constitute verities on appeal. *In re Estate of*

*Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Challenged findings are verities if they are supported by substantial evidence. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). "Substantial evidence" requires us to determine if the evidence is "sufficient to persuade a rational, fair-minded person of the truth of the finding." *Jones*, 152 Wn.2d at 8. The evidence and all reasonable inferences are considered in a light most favorable to the prevailing party. *Real Carriage Door Co., Inc. ex. rel. Rees v. Rees*, 17 Wn. App. 2d 449, 457, 486 P.3d 955 (2021). "We do not review the trial court's credibility determinations or weigh conflicting evidence 'even though we may disagree with the trial court in either regard.'" *Black*, 188 Wn.2d at 127 (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 740, 513 P.2d 831 (1973)). We review conclusions of law de novo and consider whether they are supported by the trial court's findings. *Littlefair v. Schulze*, 169 Wn. App. 659, 664, 278 P.3d 218 (2012).

### B. Elements of Tort Claims for Misrepresentation

A plaintiff making a claim for fraud/intentional misrepresentation must prove each of nine elements:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996).

13

Negligent misrepresentation has similar elements:

(1) That [the defendant] supplied information for the guidance of others in their business transactions that was false; and

(2) That [the defendant] knew or should have known that the information was supplied to guide [the plaintiff] in business transactions; and

(3) That [the defendant] was negligent in obtaining or communicating false information; and

(4) That [the plaintiff] relied on the false information supplied by [the defendant]; and

(5) That [the plaintiff's] reliance on the false information supplied by [the defendant] was *justified* (that is, that *reliance was reasonable under the surrounding circumstances*); and

(6) That the false information was the proximate cause of damages to [the plaintiff].

*Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536, 545, 55 P.3d 619 (2002) (emphasis in original) (alterations in original).

Both types of misrepresentation must be proved by "clear, cogent, and convincing evidence." *RockRock Grp., LLC v. Value Logic*, LLC, 194 Wn. App. 904, 915, 380 P.3d 545 (2016) (negligent misrepresentation); *Stiley*, 130 Wn.2d at 505 (fraudulent misrepresentation). The burden is on the "plaintiff to prove the existence of *all* the essential and necessary elements" for each claim and the absence of any element is "fatal to a recovery." *Puget Sound Nat'l Bank v. McMahon*, 53 Wn.2d 51, 54, 330 P.2d 559 (1958) (emphasis in original).

14

C. *Defenses Raised by Woolletts*

As a preliminary matter, we address two defenses raised by the Woolletts. The Woolletts contend that regardless of any representations they made in Form 17, the integration clause in the parties' "Residential Real Estate Purchase and Sale Agreement" (REPSA) precluded Neis' claims for misrepresentations made in Form 17. We disagree.

The REPSA's integration clause provides that it "supersedes all prior or contemporaneous understandings and representations" and represents the entire agreement of the parties. Ex. 110. In addition, RCW 64.06.020(3) explicitly excludes Form 17 from being considered as part of any written agreement. Thus, any claim for breach of contract based on representations in Form 17 would fail. *See Brooks v. Nord*, 16 Wn. App. 2d 441, 450-51, 480 P.3d 1167 (2021).

However, the integration clause does not preclude independent tort claims. *Id.* "An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Eastwood v. Horse Harbor Found.*, 170 Wn.2d 380, 392, 241 P.3d 1256 (2010). The Woolletts have a common law duty to refrain from committing fraud. *Jackowski v. Borchelt*, 174 Wn.2d 720, 738, 278 P.3d 1100 (2012). The integration clause in the contract does not preclude Neis from bringing claims based on the independent torts of misrepresentation. *Brooks*, 16 Wn. App. 2d at 451.

We also reject the Woolletts' claim that Neis was required to independent verify each and every representation made in Form 17, and had no right to rely on the representations. Generally, a buyer of real estate is entitled to rely on representations made in the statutorily required real estate disclosure form. *Jackownski*, 174 Wn.2d at 738 ("[b]ecause the [sellers] represented in Form 17 that the property did not contain fill material, the [buyers] were entitled to rely upon the representation."). However, "[w]hen a buyer is on notice of a defect, it must make further inquiries of the seller." *Douglas v. Visser*, 173 Wn. App. 823, 830, 295 P.3d 800 (2013), *see* RCW 64.06.020 ("Buyer has a duty to pay diligent attention to any material defects that are known to Buyer or can be known to Buyer by utilizing diligent attention and observation."). In other words, a buyer cannot justifiably rely on a seller's representation if the defect is known by the buyer or is obvious upon the buyer's inspection. *Id*. at 834. Thus, Neis was entitled to rely on the representations made in Form 17 unless she was on notice of a defect or discrepancy.

*D. Adequacy of Court's Findings and Conclusions*

Neis contends 'that the court's findings are deficient because the court did not address the evidence presented with respect to each element of each claim. We agree that the findings and conclusions could have been more precise and specific.

Here, there were multiple claims and multiple parties. In addition, the evidence and elements of the different claims tended to overlap. In drafting its findings, the trial

court did not specify the elements or claims to which each finding pertained.  The court's

conclusions on negligent misrepresentation do not mirror the elements of that claim.  And

the court's generalized conclusion on fraudulent misrepresentation do not indicate which

elements had not been proved.  This made review difficult.

The purpose of findings of fact is to ensure that the decisionmaker "'has dealt

fully and properly with all the issues in the case before he decides it and so that the

parties involved'" and the appellate court "'may be fully informed as to the bases of his

decision when it is made.'"  *In re Detention of LaBelle*, 107 Wn.2d 196, 218-19, 728

P.2d 138 (1986) (internal quotation marks omitted) (quoting *State v. Agee*, 89 Wn.2d 416,

421, 573 P.2d 355 (1977)).

Nevertheless, we discern that the court ultimately concluded that Neis failed to

prove that the Woolletts made misrepresentations about boundary disputes or

encroachments on the property she was purchasing, and failed to prove any damages

from the alleged misrepresentations.  Because we determine that these conclusions were

supported by the findings and the evidence, we can affirm without remanding for more

detailed findings.

E.  *Application*

As we noted above, Neis' tort claim for misrepresentation is distinct from her

breach of contract claim for misrepresentation.  In her claim for breach of contract, Neis

asserted that the Woolletts represented that the property being sold included the area

where the shed, parking area, and carport were located. While noting that Neis was purchasing an easement to use this area, the trial court concluded that Neis failed to prove that the Woolletts represented they were selling fee title to this area. Instead, the court concluded that the Woolletts made no representations about the property boundaries, Neis failed to ascertain the property boundaries on her own, and the contract clearly described the property being sold. Neis does not assign error to the findings and conclusions related to the court's dismissal of her breach of contract claim and so they become verities on appeal. *Jones*, 152 Wn.2d at 8. Nevertheless, throughout this appeal, Neis conflates her claim for misrepresenting the boundary lines with her claim that the Woolletts misrepresented that there were no boundary disputes and no encroachments on the property she was purchasing.

Neis' tort claims for misrepresentation are based on representations made in Form 17. She contends that the Woolletts falsely represented that there were no boundary disputes or encroachments. Significant for purposes of this appeal is that the Woolletts did not make any representations in Form 17 about the *location* of any boundary lines. Instead, Form 17 asked whether there were any boundary *disputes*.

Here, there is no evidence of a dispute concerning the boundary of the property sold to Neis. As the trial court concluded, Neis purchased exactly what was legally described in the contract. The Frasers and the Woolletts agreed on the location of the legally described boundaries between their properties. The Frasers placed stakes in the

18

ground to mark the legally described boundaries. The dispute about the Woolletts'

ownership interest in the additional easement area did not affect the boundary line of the

property Neis purchased other than to possibly expand it.

Nor did the trial court err in concluding that the Woolletts did not make

misrepresentations about encroachments. An "encroachment" is "an interference with or

intrusion onto another's property." Black's Law Dictionary 667 (11th ed. 2019); *see*

*Garcia v. Henley*, 190 Wn.2d 539, 415 P.3d 241 (2018). At trial and on appeal, Neis

contends that three improvements encroached on the easement area: a retaining wall, a

shed, and a carport.

In this case, whether the structures intruded on or interfered with another's

property is a question of fact. Here, there is disputed evidence on whether the shed and

carport intruded on or interfered with the property of another. As easement owners, the

Woolletts had some property rights to the disputed area. The shed and carport were both

described as unaffixed to the ground (i.e. moveable and not permanent structures). Fraser

testified that it was his belief that the Woolletts' easement rights granted them the right to

place their shed on the easement property.

Neis must also prove that the Woolletts knew that the shed and carport were

considered encroachments. Again, the evidence on this is disputed. Fraser testified that

he thought the Woolletts' carport was not authorized by the easement, but there is no

evidence that his subjective belief was ever communicated to the Woolletts. Nor was

there any testimony that anyone told the Woolletts that the retaining wall, carport, or shed interfered with property rights or needed to be moved. The evidence was undisputed that the retaining wall, shed, and carport are still in the same location and being used by Neis, and no one has told her to move them.

The misrepresentation claim requires Neis to show that the Woolletts knew the retaining wall, shed, or carport were interfering with or intruding on the rights of others and then represented otherwise. At trial she failed to produce any evidence to support this claim.

Neis' challenge to findings 22 and 23 do not change this outcome. Neis contends that the court's finding that "Neis was not told by anyone that she was purchasing the real property under the shed or parking area," is not supported by substantial evidence because the Woolletts impliedly represented that Neis would be purchasing the real property under the shed and carport. CP at 733. But this finding relates to Neis' breach of contract claim not her tort claims. The trial court found that the Woolletts did not misrepresent the property being sold to Neis and that Neis purchased the property described in the purchase and sale agreement. This finding has nothing to do with whether there were encroachments or boundary disputes concerning the property sold to Neis.

Neis also challenges the court's finding that Neis failed to "prove any damages due to any actions or inactions by Woolletts." CP at 626. The measure of damages in a misrepresentation case is usually the "benefit of the bargain." *First Church of the Open*

*Bible v. Cline J. Dunton Realty, Inc.*, 19 Wn. App. 275, 280, 574 P.2d 1211 (1978). This is "the difference between the market value of the property as represented and the market value of the property as it actually was at the time of sale." *Id.*

Neis points out that she produced an expert witness whose unrebutted testimony was that the value of the easement property was $27,800. But these potential damages pertain to Neis' breach of contract claim, i.e., the value of the property with the easement area versus the value of the property without the easement area. This testimony does not address damages for the tort claims. The expert also testified that property with a boundary dispute is worth less than property without a boundary dispute, but she did not provide any figures on the difference in value. Nor did the expert or any other witness provide testimony on whether the alleged encroachment caused a difference in value. In essence, there is no evidence that Neis paid more than market value for her property in light of the location of the shed and carport.

The lack of evidence on damages for any misrepresentation is fatal to Neis' claims of misrepresentation. While the trial court's findings and conclusions are difficult to parse out, the court's findings and conclusions with respect to damages are clear. The findings are supported by substantial evidence and in turn support the court's conclusion that Neis failed to prove her claims for misrepresentation.

21

2.     ATTORNEY FEES AWARDED TO THE WOOLLETTS

Neis challenges the trial court's decision to award attorney fees against Neis in favor of the Woolletts.  Neis challenges the procedure employed by the court and contends that the trial court abused its discretion by failing to segregate fees associated with the Woolletts claim for adverse possession against the Frasers.

The REPSA between Neis and the Woolletts included an attorney fee provision that stated: "[I]f Buyer or Seller institutes suit against the other concerning this Agreement the prevailing party is entitled to reasonable attorneys' fees and expenses." Ex. 1.

In its findings and conclusions following the bench trial, the court ordered each party to pay their own costs and attorney fees.  The Woolletts filed a motion for an attorney fee award against Neis, and in their reply, the Woolletts cite to CR 54.  At the hearing on the motion, Neis argued that CR 54 did not permit the trial court to reverse its final decision stating that each party was to pay their own attorney fees and argued that the Woolletts needed to bring a CR 59 motion for reconsideration.  Ultimately, the court reversed its initial denial of attorney fees to either party and awarded the Woolletts reasonable attorney fees.

As to the amount of attorney fees, Neis argued that time entries related to the Woolletts' unsuccessful adverse possession claim needed to be excluded from any attorney fee award.

22

A few days later, the court entered its findings and conclusions. The court ruled that:

> 3. The hourly rate requested by the Woolletts is reasonable and consistent with the hourly rate charged in these matters by experienced counsel.
>
> 4. I have reviewed the hours requested and determined they are reasonable and were necessary for the result obtained.
>
> 5. In reviewing the work performed, I find the work involved overlapping theories and a common core of facts arising out of the claims by Plaintiff based upon the contract in this case. The work performed was necessary for the results achieved and total award is this Court's determination based on the mixed questions and the results of trial.

CP at 866. The court concluded that "Defendants Woolletts are awarded reasonable Attorney Fees and Cost [sic] of $50,323.18." CP at 866.

As a threshold issue, the Woolletts argue that because Neis appealed the court's decision prior to the attorney fee award, she needed to file a separate notice of appeal of the court's decision on attorney fees. The Woolletts are incorrect. RAP 7.2(i) states that: "A party may obtain review of a trial court decision on attorney fees, costs and litigation expenses in the same review proceeding as that challenging the judgment without filing a separate notice of appeal or notice for discretionary review." Thus, Neis did not need to a file a separate notice of appeal of the decision to award attorney fees to the Woolletts.

Neis argues that the Woolletts needed to a bring a CR 59 motion for reconsideration instead of a CR 54 motion for attorney fees because the court denied

attorney fees in its final judgment. She asserts that absent a motion under CR 59 the court lacked jurisdiction to reconsider its earlier ruling. We disagree. Regardless of whether the motion should have been brought under CR 54 or CR 59, Neis fails to cite any authority in support of her contention that the failure to cite CR 59 divests the superior court of jurisdiction to reconsider its decision. Nor does she show any prejudice from citing the wrong court rule. A motion under either rule must be filed and served within ten days of the decision. CR 54(d)(2), CR 59(b). The Woolletts' motion for attorney fees was filed within seven days of the court's findings and conclusions.

Moreover, the Woolletts' motion for attorney fees under CR 54 was appropriate. The rule provides that claims for attorney fees "shall be made by motion unless the substantive law governing the action provides for the recovery of such fees and expenses as an element of damages to be proved at trial." CR 54(d)(2).

Neis also challenges the amount of attorney fees awarded to the Woolletts, asserting that the trial court abused its discretion by failing to excise fees associated with the Woolletts' failed defense of adverse possession.

In this case the parties' REPSA included an attorney fees clause. Thus, the court was required to award costs and attorney fees to the prevailing party on an action on the contract. RCW 4.84.330. When fees are required by contract, the only discretion is the amount to award. *Crest Inc. v. Costco Wholesale Corp.*, 128 Wn. App. 760, 772, 115 P.3d 349 (2005). In this area, the court has broad discretion. *Ethridge v. Hwang*, 105

24

Wn. App. 447, 460, 20 P.3d 958 (2001). "The 'prevailing party' for purposes of a contractual provision for an award of attorney fees is usually one who receives judgment in his or her favor." *Costco Wholesale Corp*., 128 Wn. App. at 772. "When neither party wholly prevails, the court should award fees to the substantially prevailing party, and the identity of the substantially prevailing party depends on the extent of the relief afforded the parties." *McLelland v. Paxton,* 11 Wn. App. 2d 181, 222-23, 453 P.3d 1 (2019).

Here, a judgment was entered in favor of the Woolletts, and while they did not prevail on their claim of adverse possession, they were still the substantially prevailing party. And while adverse possession was inartfully raised as a claim, it was intended as a defense to Neis' claim for breach of contract. As the trial court noted, while the Woolletts' adverse possession claim was dismissed without answering the substantive claim, the court ultimately concluded that the Woolletts transferred "whatever right title and interest they held in the land under the parking area and shed to Neis." CP at 627. We find that the trial court did not abuse its discretion in failing to excise attorney fees incurred for bringing the failed defense of adverse possession.

3.    DENIAL OF ATTORNEY FEES TO THE FRASERS

The Frasers appeal the trial court's denial of their request for attorney fees for having to defend against the Woolletts' third-party claim for adverse possession claim. The Frasers argue that the trial court erred as a matter of law when it found that RCW 7.28.083 did not entitle them to attorney fees. The Frasers also argue that the court

25

abused its discretion when it denied their request for attorney fees. It is unclear what the court's reasons were for denying the Frasers' request for attorney fees. Thus, remand is necessary.

Whether a trial court is authorized to award attorney fees is a question of law reviewed de novo. *Gander v. Yeager*, 167 Wn. App. 638, 646, 282 P.3d 1100 (2012). RCW 7.28.083 authorizes the court to award attorney fees to the prevailing party in adverse possession lawsuits. The statute states:

> The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court **may** award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

RCW 7.28.083(3) (emphasis added).

The trial court, in its order denying the Frasers' motion for award of attorney fees, stated: "The Court finds there is not an entitlement to attorney fees pursuant to RCW 7.28.083. Attorney fees are not necessary or appropriate and would not be equitable or just in this case." CP at 870.

As a threshold issue, the Woolletts argue that the Frasers cannot recover fees pursuant to RCW 7.28.083(3) because they cannot be said to be the "prevailing party" since the Woolletts' adverse possession claim was dismissed with prejudice for lack of standing and did not proceed to trial. The Woolletts do not cite any caselaw to support

this position. Indeed, "[a] dismissal with prejudice constitutes a final judgment on the merits." *Elliott Bay Adjustment Co., v. Dacumos*, 200 Wn. App. 208, 213, 401 P.3d 473 (2017). Thus, the Frasers were the prevailing party as against the Woolletts.

On the other hand, the Frasers contend that the trial court erred as a matter of law when it found that RCW 7.28.083 does not provide an entitlement to attorney fees. RCW 7.28.083(3) makes attorney fee awards in adverse possession cases discretionary, evidenced by its use of the word "may." *In re Marriage of Kim*, 179 Wn. App. 232, 250-51, 317 P.3d 555 (2014) ("The word 'may' in a statute denotes discretion and is distinct from the word 'shall,' which indicates a mandatory action."). Thus, the trial court was correct when it found that RCW 7.28.083(3) does not create an "entitlement" to attorney fees. Instead, an attorney fee award under RCW 7.28.083(3) is discretionary.

The Frasers next argue that even if the award of fees was discretionary, the court abused its discretion by applying a "needs" test, evidenced by its statement that attorney fees would not be "equitable or just." CP at 870. The Frasers are incorrect. The statute itself states that attorney fees are only to be awarded if "after considering all the facts, the court determines such an award is *equitable and just*." RCW 7.28.083(3) (emphasis added). There is no evidence that the court engaged in an impermissible test in declining to award the Frasers their attorney fees.

The Frasers next argue that the court abused its discretion when it declined to award them their attorney fees. In its denial of attorney fees to the Frasers, the court fails

27

to explain how or why it decided that an award of attorney fees to the Frasers was not "necessary or appropriate" or "equitable or just." CP at 870. Further, the court's oral ruling does not help explain the court's reasoning:

> I don't find, certainly, Mr. Gales and Mr. Montgomery have brought a matter that is appropriate to the Court. But I do not find under these circumstances that an award of attorney fees is necessary by statute or appropriate in the exercise of discretion of the Court. I think that at any time these parties could have done what the Court did. And so for that reason, I'm denying the motion by Frasers for attorney fees as it relates to their litigation against the Woolletts.

RP at 411. The court's oral ruling is vague and does not explain the reasons for its decision.

We note that the Woolletts added the Frasers as parties to this lawsuit in order to assert a separate claim of adverse possession against the Frasers. However, at the time the Frasers were added as third-party defendants, the Woolletts did not own the property and did not have standing to assert a claim for adverse possession. The Woolletts argue that their claim of adverse possession was really a defense to Neis' breach of contract claim. But the Woolletts could have raised a defense of adverse possession without filing a separate claim for which they had no standing and without adding the Frasers as a party.

Regardless, we cannot tell from the record whether the court based its decision on tenable grounds. Thus, we remand for the court to reconsider its denial of attorney fees

No. 38877-8-III
*Neis, et al v. Woollett, et al*

to the Frasers and enter more detailed findings on whether or not to award attorney fees to the Frasers.

4.      ATTORNEY FEES ON APPEAL

All three parties request attorney fees on appeal.  We deny Neis her attorney fees because she did not prevail.  The Woolletts request their reasonable attorney fees and costs pursuant to RAP 18.1.  As the prevailing party, the Woolletts are entitled to their fees against Neis under the REPSA and RCW 4.84.330.

The Frasers and the Woolletts request attorney fees on appeal against each other. The only issue raised by the Frasers related to their request for attorney fees at trial. Since we are remanding for more detailed findings we conclude that the Frasers prevailed on appeal and we award the Frasers their attorney fees and costs on appeal against the Woolletts as equitable and just under RCW 7.28.083(3).  We decline the Woolletts' request for attorney fees and costs against the Frasers.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

I CONCUR:

_____
Cooney, J.

29

No. 38877-8-III

PENNELL, J. (concurring) — I agree with the final outcome of this case. I write separately because some of my reasoning in reaching this outcome differs from that of the majority.

The contested issue in this case is whether Howard and Petria Woollett made false statements on their June 2017 "Seller Disclosure Statement" (Form 17). Ex. D-108. The Woolletts answered "no" to the question of whether there were any "encroachments, boundary agreements, or boundary disputes." *Id*. at 1. Paula Neis claims this answer was incorrect on two fronts: (1) there was a boundary dispute because the Woolletts' shed and carport were not contained within the property boundary lines, and (2) there was an encroachment because the shed and carport encroached on the property of John and Gloria Fraser and on the easement. I address each claim in turn.

With respect to the issue of a boundary dispute, the majority opinion correctly notes that the Woolletts never misrepresented the fact that the property described in their sales documents aligned with what was set forth in the boundary survey. But that does not really end the matter. The position advanced by the Woolletts at trial was that, regardless of what was stated in the sales documents and survey, the Woolletts had actually acquired the property under the shed and carport through adverse possession. In other words, their position was that they had acquired property beyond what was stated in the property description or the survey. This constituted a boundary dispute that should have been disclosed on Form 17.

I believe Paula Neis could have prevailed on a misrepresentation claim based on the adverse possession issue. But for whatever reason, Ms. Neis declined to pursue the issue of adverse possession at the time of trial. This variant of the boundary dispute claim has therefore been waived.

In addition to asking about boundary disputes, Form 17 obliged the Woolletts to disclose whether there were any encroachments. The wording of the form made clear that the questions on Form 17 pertained to the property being sold. Thus, the question was whether there were any encroachments on the property being sold by the Woolletts; it was not whether there were any encroachments on property owned by others. Here, the shed, carport, and retaining wall were not encroaching on the property the Woolletts sold to Paula Neis. The structures might have encroached on the Frasers' property. And they might have interfered (and thus encroached) on the rights of other easement holders. But the structures did not encroach on the property sold by the Woolletts to Ms. Neis. As to the rights of the Woolletts (and then Ms. Neis), there was no interference or encroachment. Thus, regardless of the dispute over the shed, carport, and retaining wall, the Woolletts' statement that there were no encroachments on the property sold was accurate.

I disagree with the majority's reasoning that the Woolletts' statement regarding encroachments was not false because no one ever objected to the placement of the shed, carport, and retaining wall. The easement that was held by the Woolletts (and then sold

to Ms. Neis) was for "right of way purposes." Ex. P-005. It did not allow for the erection of any structures. Regardless of the lack of any objection, the easement did not provide the Woolletts (and then Ms. Neis) a vested right to maintain structures within the boundary of the easement. Save for a claim of adverse possession, the Frasers or other easement holders could demand removal of the structures at any time. Thus, had Form 17 required the Woolletts to disclose whether they were selling any structures that encroached on someone else's property, they would have been required to answer "yes" (save for a successful claim of adverse possession).

Regardless of any false statements on Form 17, I agree with the majority that Paula Neis cannot prevail on a tort claim because she has not shown damages. There was no evidence at trial indicating that the price paid by Ms. Neis for the property failed to reflect the fact that the shed, carport, and retaining wall fell outside survey lines. While Ms. Neis testified to emotional distress damages, she has failed to cite any authority to support her claim that such damages are available in the current context.

I otherwise concur in the majority's disposition.

_____
Pennell, J.

3